UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| RUBLOFF DEVELOPMENT GROUP, | ) | |
| INC., RUBLOFF MUNDELEIN LLC, | ) | |
| MCVICKERS DEVELOPMENT LLC, | ) | |
| MCVICKERS NEW LENOX LLC, | ) | |
| MCVICKERS COOPER, LLC, | ) | |
| MCVICKERS HICKORY CREEK, LLC, | ) | Case No. 1:10-cv-3917 |
| MCVICKERS TONNELL LLC, | ) | |
| MCVICKERS WILLIAMS LLC, | ) | Hon. Harry D. Leinenweber |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| SUPERVALU, INC., d/b/a JEWEL-OSCO, | ) | |
| and THE SAINT CONSULTING GROUP, | ) | |
| INC., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF
THE SAINT CONSULTING GROUP, INC.'S MOTION TO DISMISS**

The Saint Consulting Group, Inc.

By:  /s/ *Craig A. Knot*
       Craig A. Knot

Gregory H. Furda
Craig A. Knot
Caroline L. Schiff
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, IL  60603
Ph:  (312) 853-7000
Fax: (312) 853-7036

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................................................ i

TABLE OF AUTHORITIES .............................................................................................. iii

FACTUAL BACKGROUND ................................................................................................1

The Mundelein Plan Commission and Board of Trustees ................................................2

Mundelein Litigation ...........................................................................................................5

The New Lenox Plan Commission and Board of Trustees ................................................6

Rubloff's and McVickers' Amended Complaint ...............................................................7

LEGAL STANDARD ON A MOTION TO DISMISS .....................................................9

ARGUMENT ........................................................................................................................9

I.      COUNT I SHOULD BE DISMISSED BECAUSE IT IS PREDICATED
        ON A HYPOTHETICAL FUTURE ACTION AND IS NOT RIPE FOR
        DECISION .................................................................................................................10

II.     COUNT I SHOULD BE DISMISSED BECAUSE SAINT
        CONSULTING'S ALLEGED ACTIONS ARE PROTECTED FROM
        LIABILITY UNDER THE FIRST AMENDMENT .......................................................12

        A.      Count I Should Be Dismissed Because Saint Consulting's Alleged
                Actions Are Protected From Liability Under The Illinois Citizen
                Participation Act .......................................................................................13

                1.      The CPA Protects Saint Consulting's First Amendment Rights
                        From Plaintiffs' Censorious Suit ...............................................13

                2.      Saint Consulting's Alleged Actions Are Immunized Under The
                        CPA..........................................................................................14

                3.      This Court Should Award Saint Consulting Its Attorneys Fees And
                        Costs.........................................................................................19

        B.      Count I Should Be Dismissed Because Saint Consulting's Alleged
                Actions Are Immune From Liability Under the *Noerr-Pennington*
                Doctrine.......................................................................................................19

III.    COUNT II SHOULD BE DISMISSED BECAUSE THERE IS NO
        INDEPENDENT CAUSE OF ACTION FOR NEGLIGENT
        SPOLIATION OF EVIDENCE..........................................................................22

IV.     COUNT III SHOULD BE DISMISSED BECAUSE "INJUNCTIVE
        RELIEF" IS NOT A CAUSE OF ACTION .......................................................................24

CONCLUSION.............................................................................................................................25

# TABLE OF AUTHORITIES

Page(s)

CASES

41 News, Inc. v. County of Lake, No. 09 C 0088, 2010 WL 744296 (N.D. Ill. Feb. 24, 2010) ..................................................................................................................3

Aetna Life Ins. Co. v. Haworth, 300 U.S. 227 (1937) ..................................................10

Aida Food & Liquor, Inc. v. City of Chicago, No. 03 C 4341, 2004 WL 719663 (N.D. Ill. March 31, 2004).........................................................................................21

Anderson v. Hale, 198 F.R.D. 493 (N.D. Ill. 2000).......................................................17

Ashcroft v. Iqbal, 129 S.Ct. 1937 (2009)........................................................................9

Babich v. River Oaks Toyota, 879 N.E.2d 420 (Ill. Ct. App. 2007), appeal denied, 882 N.E.2d 76 (Ill. 2008)............................................................................................22

Baltimore Scrap Corp. v. David J. Joseph Co., 237 F.3d 394 (4th Cir.), cert. denied, 533 U.S. 916 (2001).......................................................................................16, 17

Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007) ....................................................9, 11

Bilal v. Wolf, No. 06 C 6978, 2009 WL 1871676 (N.D. Ill. June 25, 2009) ..................3

Bolden v. Stroger, No. 03 C 5617, 2005 WL 283419 (N.D. Ill. Feb. 1, 2005) .............11

Boyd v. Travelers Ins. Co., 652 N.E.2d 267 (Ill. 1995).........................................22, 24

California Motor Transp. Co. v. Trucking Unlimited, 404 U.S. 508 (1972)............19, 20

Christian Gospel Church, Inc. v. City & County of San Francisco, 896 F.2d 1221 (9th Cir.), cert denied, 498 U.S. 999 (1990), superseded on other grounds by 42 U.S.C. § 2000(e) ..............................................................................................................15

Citizens United v. Fed. Election Comm'n, 130 S.Ct. 876 (2010) .................................16

City of Columbia v. Omni Outdoor Adver., Inc., 499 U.S. 365 (1991) ...................19, 20

Cygan v. Resurrection Med. Ctr., No. 04 C 4168, 2005 WL 4795018 (N.D. Ill. July 27, 2005) ..............................................................................................................24

Dardeen v. Kuehling, 821 N.E.2d 227 (Ill. 2004).........................................................22

E.E.O.C. v. Concentra Health Servs., Inc., 496 F.3d 773 (7th Cir. 2007).......................9

E.R.R. Presidents Conf. v. Noerr Motor Freight, Inc., 365 U.S. 127, reh'g denied, 365 U.S. 875 (1961)..................................................................................................19

First Nat'l Bank of Boston v. Bellotti, 435 U.S. 765, reh'g denied, 438 U.S. 907 (1978)............16

Frayne v. Chicago 2016, No. 08 C 5290, 2009 WL 65236 (N.D. Ill. Jan. 8, 2009) .....................19

George v. Kraft Foods Global, Inc., 251 F.R.D. 338 (N.D. Ill. 2008)..........................................11

Gorman Towers, Inc. v. Bogoslavsky, 626 F.2d 607 (8th Cir. 1980)...........................................15

Henson v. CSC Credit Servs., 29 F.3d 280 (7th Cir. 1994)............................................................3

Herr v. Pequea Twp., 274 F.3d 109 (3d Cir. 2001), abrogated on other grounds by *United Artists Theatre Circuit, Inc. v. Twp. Of Warrington, Pa.*, 316 F.3d 392, 400 (3d Cir. 2003) ......................................................................................................................................15

Indiana Right to Life, Inc. v. Shepard, 507 F.3d 545 (7th Cir. 2007)...........................................12

Kontos v. United States Dep't of Labor, 826 F.2d 573 (7th Cir. 1987) ..........................................9

Lettuce Entertain You Enters., Inc. v. Leila Sophia AR, LLC, -- F. Supp. 2d --, 2010 WL 748169 (N.D. Ill. 2010)........................................................................................................25

Liberty Lake Invs., Inc. v. Magnuson, 12 F.3d 155 (9th Cir. 1993), cert. denied, 513 U.S. 818 (1994).............................................................................................................................16

Long v. Shorebank Dev. Corp., 182 F.3d 548 (7th Cir. 1999) .......................................................9

Lujan v. Defenders of Wildlife, 504 U.S. 555 (1992) ...................................................................11

Menominee Indian Tribe v. Thompson, 161 F.3d 449 (7th Cir. 1998), cert. denied, 526 U.S. 1066 (1999)........................................................................................................................3

MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 127 (2007).................................................10

Mercatus Group LLC v. Lake Forest Hosp., 528 F. Supp. 2d 797 (N.D. Ill. 2007) .....................21

Motorola, Inc. v. Lemko Corp., No. 08 C 5427, 2010 WL 1474795 (N.D. Ill. April 12, 2010) ...................................................................................................................................24

Northern Trust Co. v. Peters, 69 F.3d 123 (7th Cir. 1995) .............................................................9

NAACP v. Alabama, 357 U.S. 449 (1958)...........................................................................17, 18

NAACP v. Button, 371 U.S. 415 (1963) .......................................................................................15

New West, L.P. v. City of Joliet, 491 F.3d 717 (7th Cir. 2007) ....................................................19

Noah v. Enesco Corp., 911 F. Supp. 305 (N.D. Ill. 1995).............................................................24

Olivarius v. Tharaldson Prop. Mgmt., Inc., 695 F. Supp. 2d 824 (N.D. Ill. 2010)...............22, 23

Opdyke Inv. Co. v. City of Detroit, 883 F.2d 1265 (6th Cir. 1989) ..............................................16

Perks v. County of Shelby, No. 09-3154, 2009 WL 2777882 (C.D. Ill. Aug. 31, 2009) ..............22

Port Washington Teachers' Ass'n v. Bd. of Educ. of the Port Washington Union Free
    Sch. Dist., 478 F.3d 494 (2d Cir. 2007)............................................................................12

Premier Elec. Const. Co. v. Int'l Broth. of Elec. Workers, 627 F. Supp. 957 (N.D. Ill.
    1985), judgment rev'd on other grounds, *Premier Elec. Constr. Co. v. Nat'l Elec.
    Contractor's Ass'n*, 814 F.2d 358 (7th Cir. 1987)................................................................21

Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc., 508 U.S. 49 (1993).......19, 21

Roberts v. United States Jaycees, 468 U.S. 609 (1984).................................................................15

Roller v. Bd, of Educ. of Glen Ellyn Sch. Dist. No. 41, No. 05 C 3638, 2006 WL 200886
    (N.D. Ill. Jan. 18, 2006) ........................................................................................................3

Shelton v. Tucker, 364 U.S. 479 (1960) ........................................................................................17

Spanish Int'l Commc'ns Corp., Sin, Inc. v. Leibowitz, 608 F. Supp. 178 (S.D. Fla.), aff'd,
    778 F.2d 791 (11th Cir. 1985) ..............................................................................................21

United Mine Workers of Am. v. Pennington, 381 U.S. 657 (1965) ...............................................19

Urantia Found. v. C. I. R., 684 F.2d 521 (7th Cir. 1982)..............................................................11

Valley Forge Christian Coll. v. Ams. United for Separation of Church and State, Inc., 454
    U.S. 464 (1982)....................................................................................................................11

Westfield Partners, Ltd. v. Hogan, 740 F. Supp. 523 (N.D. Ill. 1990) ...................................15, 20

White v. Lee, 227 F.3d 1214 (9th Cir. 2000)............................................................................15, 20

Whitmore v. Arkansas, 495 U.S. 149 (1990).................................................................................11

STATUTES

735 ILCS 110/1.........................................................................................................1, 9, 12, 13

735 ILCS 110/5..........................................................................................................................14

735 ILCS 110/10........................................................................................................................14

735 ILCS 110/15...................................................................................................................14, 18

735 ILCS 110/25 .................................................................................................................19

735 ILCS 110/30 .................................................................................................................14

28 U.S.C. § 2201 .................................................................................................................10

**OTHER AUTHORITIES**

Federal Rule of Civil Procedure 12(b)(1) ..................................................................9, 10

Federal Rule of Civil Procedure 12(b)(6) ..................................................................9, 10

Illinois Supreme Court Rule 137 ................................................................................6, 21

Under Article III of the United States Constitution, the judicial power of the federal courts extends only to actual cases. The Amended Complaint, however, seeks nothing more than an advisory opinion on the admissibility of certain documents relating to a lawsuit that some plaintiffs might or might not file and seeks damages that they might suffer if they do not win the hypothetical lawsuit. This potential dispute is far from reality, is not ripe for a declaration, damages, or injunctive relief, and should be dismissed.

To the extent there is a justiciable controversy – and there is not – the Amended Complaint runs afoul of another constitutional provision, the First Amendment. The First Amendment guarantees the rights of all persons to associate freely, to petition government freely, and to speak freely, but the Amended Complaint contemplates a suit that would impose costly litigation and liability on The Saint Consulting Group, Inc. ("Saint Consulting") for exercising its First Amendment rights. This is prohibited by both the Illinois Citizen Participation Act, 735 ILCS 110/1 *et seq.,* and the *Noerr-Pennington* doctrine.

## FACTUAL BACKGROUND

This action arises out of public opposition to the building of two shopping centers developed by plaintiffs in Mundelein and New Lenox, Illinois.[1]  Plaintiffs are commercial real estate developers who sought government approval to build large shopping centers in those communities. (Amended Complaint ("Am. Cmplt.") ¶¶ 19, 22)  Plaintiffs Rubloff Development Group, Inc. and Rubloff Mundelein LLC ("Rubloff") sought approval from the Village of Mundelein to build the Mundelein Town Center. (*Id.* ¶ 19)  Plaintiffs McVickers Development LLC, McVickers New Lenox LLC, McVickers Cooper, LLC, McVickers Hickory Creek, LLC,

---

[1] The allegations in the Amended Complaint are assumed to be true solely for purposes of this motion to dismiss.

McVickers Tonnell, LLC, and McVickers Williams LLC ("McVickers") were developers involved in the building of a shopping center in New Lenox, Illinois.  (*Id.* ¶ 22)

Plaintiffs claim that Saint Consulting and SuperValu Inc. ("SuperValu") "incited" and "orchestrated"  "objections" to these developments at planning commissions and village boards and, in the case of Mundelein, "incited" and "orchestrated" a lawsuit in the Lake County Circuit Court.  (*Id.* ¶¶ 6, 23, 24)  The objections and lawsuit were brought by "residents of Mundelein and New Lenox." (*Id.* ¶ 23)

The Amended Complaint purports to bring three causes of action.  In Count I (Am. Cmplt. ¶¶ 33-38), an unidentified subset of plaintiffs claim they might bring suit against Saint Consulting and SuperValu in the future and are seeking a pre-filing declaration that certain documents are admissible in that potential suit.[2]  In Count II (*id.* ¶¶ 39-49), plaintiffs seek damages under the heading "Negligence: Spoliation of Evidence," claiming that in the event they lose this hypothetical lawsuit they did so because defendants destroyed documents that "might have conclusively established crucial facts in Plaintiffs' anticipated claims … or rebut[ted] Defendants' defenses to those claims."  (*Id.* ¶ 47)  Count III (*id.* ¶¶ 50-55) seeks an "injunction prohibiting Defendants from destroying any materials relating to Plaintiffs' anticipated claims…."  (*Id.* ¶55)

### The Mundelein Plan Commission and Board of Trustees

The objections about which plaintiffs complain were lodged by residents and adjoining landowners, who –  under oath –  voiced concerns about grease and oil from parking lot run-off, basements flooding when 100 acres of wetlands were paved over, and numerous other insults to

---

[2] Plaintiffs allege that "Rubloff received the materials at issue in this action."  (Am. Cmplt. ¶ 23)  Plaintiffs say nothing about how they received these documents or from whom they received them.

their quality of life and property values.  (Plan Commission Minutes, May 9, 2007 at 6-8) (Ex.

A)[3]  At the same meeting, a representative of the adjacent Ivanhoe Club and the residents who

lived there expressed concern that "the Menards will be right up to the driving range" and that

headlights will be "shining in our homes."  (Comment of Mike Rolfs; *id.* at 6)  Rubloff's own

representative acknowledged "traffic problems" that could not be "completely cure[d]."

(Comment of Bob Brownson; *id.* at 4)

The Mundelein Plan Commission met again two weeks later.  Rubloff's lawyer conceded

that valid points were raised at the May 9 meeting: "[A]fter hearing some of the comments from

the Plan Commission and the public at the May 9th meeting, the petitioner realized there were

some valid points raised."  (Plan Commission Minutes, May 23, 2007 at 3) (Ex. B)  At the May

23, 2007 Plan Commission meeting, more residents voiced concerns about landscaping, fencing,

the distance between parking stalls and the residential properties, impacts on a nearby cemetery,

grade changes, parking ratios, parking lot lighting, appraisal information, traffic, noise, effect on

environment, property values, site lines, and crime.  (*Id.* at 4-5)  Ed Abderholden, a Plan

Commission member, expressed concern "about the Menard's site and room for berming

between Menards and the residences."  (*Id.* at 5)  The Commission voted to continue the public

hearing one week later.  (*Id.*)

---

[3] On a motion to dismiss, the Court may take judicial notice of public documents such as exhibits A through O. *Menominee Indian Tribe v. Thompson*, 161 F.3d 449, 456 (7th Cir. 1998), *cert. denied*, 526 U.S. 1066 (1999) (court may consider judicially noticed documents, including documents contained in the public record and reports of administrative bodies); *Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994) (court may take judicial notice of pleadings and public documents without converting a 12(b)(6) motion to a motion for summary judgment); *41 News, Inc. v. County of Lake*, No. 09 C 0088, 2010 WL 744296, at *2 (N.D. Ill. Feb. 24, 2010) (slip copy) (judicial notice could be taken of county zoning commissioner's public ruling); *Bilal v. Wolf*, No. 06 C 6978, 2009 WL 1871676, at *1 (N.D. Ill. June 25, 2009) (slip copy) (court may take judicial notice of records of court and governmental proceedings); *Roller v. Bd, of Educ. of Glen Ellyn Sch. Dist. No. 41*, No. 05 C 3638, 2006 WL 200886, at *4, n.2 (N.D. Ill. Jan. 18, 2006) (judicial notice taken of board of education meeting minutes).

More than 80 persons attended the May 30, 2007 meeting. (Plan Commission Minutes, May 30, 2007 Attendance List) (Ex. C)   In an e-mail appended to the minutes, commission member Scott Black observed that "considerable changes were made as a result of the public outcry on May 9th and submitted prior to the May 23rd meeting."  (*Id*., exhibit 1)  Commissioner Black wrote that his approval of the project depended on four conditions that were the "job" of the "Village Board," including architectural changes, an "upscale model" for the proposed Walmart, redesign of a brick wall, and answers to questions "regarding time of deliveries, pallet storage, hours of operation, etc."  (*Id.*)  The May 30 minutes also contain an 89-page transcript of the development-related portion of the meeting.  Attorneys for two groups of Mundelein residents and individual residents asked questions of a traffic engineer.  (May 30, 2007 Transcript) (Ex. C)  One of the attorneys did so under protest, noting the Plan Commission's failure to follow its own rules.  (*Id*. at Tr. 5-6)  At the end of the meeting, motions to approve Rubloff's requested special use permit passed 5-1.  (*Id.* at 87-88)

After the vote, Commissioner Abderholden  exhorted those in attendance to take their concerns to their elected representatives on the Village Board:

> Well, I just … for all the people in the audience, we're just a recommending body. We don't have any sort of final approval on any of this.  Your elected officials … none of us are elected officials.  We're just volunteers.  Your elected officials have the actual duty and responsibility to make the determinations to keep your … read the newspaper, contact the Village hall, there will be another presentation but not a public in front of the Village Board, but the Village Board usually does have a section of time for the public comments and it would be appropriate that you follow this to the Village.  They have the duty and responsibility to rule on this.  Make a phone call.

(*Id.* at 89; ellipsis in original)

On June 11, 2007, June 25, 2007, July 9, 2007, and July 23, 2007, the Mundelein Board of Trustees conducted additional public hearings to determine whether to accept the recommendation of the Plan Commission.  (June 11, 2007 Board of Trustee Minutes at 1) (Ex.

D); (June 25, 2007 Board of Trustee Minutes at 90) (Ex. E); (July 9, 2007 Board of Trustee

Minutes at 103) (Ex. F); and (July 23, 2007 Board of Trustee Minutes at 117) (Ex. G)  Heeding

Commissioner Abderholden's call, Mundelein residents continued expressing concerns about

and opposition to the proposed shopping center.  (June 11, 2007 Board of Trustee Minutes at 81-

82) (raising issues regarding water drainage and landscape) (Ex. D); (June 25, 2007 Board of

Trustee Minutes at 90-98) (22 parties raised concerns about pollution, noise, storm water

management, crime, traffic, and tree preservation) (Ex. E); (July 9, 2007 Board of Trustee

Minutes) (10 persons addressed the Village Board, including one who spoke in favor of the

development) (Ex. F); (July 23, 2007 Board of Trustee Minutes at 117-119) (raising issues

regarding financial impact, traffic, pollution, noise, storm water management, and crime) (Ex. G)

   On July 23, 2007, the Village Board, by a 4-1 vote, accepted the recommendation of the

Plan Commission and issued an ordinance approving Rubloff's special use request.  (*Id.* at 123);

(Certificate, Ordinance No. 07-07-46) (Ex. H)

### Mundelein Litigation

   In August and September, 2007, two groups of Mundelein residents who owned

properties contiguous to the proposed shopping center filed suit against the Village of Mundelein

and the members of the Plan Commission and the Board of Trustees in the Lake County Circuit

Court.[4]  The ATG Trust Company was sued solely as a necessary party.  (*Id.*)  The lawsuits

alleged violations of the property owners' due process rights during the Plan Commission and

Board of Trustees public hearings and other failures of these bodies to follow the law.  *See*, *e.g.*,

---

[4] Verified Complaint for Administrative Review, Injunctive Relief and Other Relief, Aug. 27,
2007, *Ivanhoe Club Property Owner's Association, et al. v. Village of Mundelein, et al.*, 07 CH
2210, Circuit Court of the Nineteenth Judicial District, Lake County, Illinois ("Aug. 27, 2007
Complaint") (Ex. I); Verified Complaint for Injunctive Relief and Other Relief, Sept. 26, 2007,
*Acker, et al. v. Village of Mundelein, et al.*, 07 CH 2526, Circuit Court of the Nineteenth Judicial
District, Lake County, Illinois ("Sept. 26, 2007 Complaint") (Ex. J).

Aug. 27, 2007 Complaint ¶¶ 16, 17, and 21 (Ex. I) and Sept. 26, 2007 Complaint ¶¶ 63, 74, and

118 (Ex. J)  Neither Rubloff nor McVickers were named as defendants in either lawsuit.  (*Id.*)

The lawsuits were consolidated and proceeded to a bench trial that lasted 11 days.

(March 26, 2010 Lake County Order ("Lake County Order") at 1) (Ex. K)  None of the

defendants challenged either suit under Illinois Supreme Court Rule 137 as frivolous or as

interposed to cause unnecessary delay.  In a 27-page decision, the Honorable Mitchell L.

Hoffman ruled that the while "[p]erhaps a different group of elected officials … would have

reached a different conclusion," the Mundelein Board's decision was not "irrational, arbitrary, or

capricious."  (*Id.* at 27)  Plaintiffs have filed a notice of appeal.  (Notice of Appeal in Case Nos.

2210 and 2256, filed July 21, 2010) (Ex. O)

### The New Lenox Plan Commission and Board of Trustees

On June 19, 2006, the New Lenox Plan Commission held a public hearing to consider

McVickers' request for a special use permit.  (June 19, 2006 Plan Commission Minutes at 4-14)

(Ex. L)  Dr. Lancaster, who maintained an office across from the project, objected because he

feared that it would increase flooding on his property.  (*Id.* at 10)  Kimberly Kowalksi, a resident

of New Lenox Township and a representative of the Livable Communities Alliance, submitted

written comments and expressed concerns about water run-off and water pollution.  (*Id.* at 10-11)

Bob Dion and Nancy Schrieber, both of New Lenox, respectively, were concerned that Walmart

offered low paying jobs and did not like Walmart's "manufacturing and employment standards

and ethics."  (*Id.* at 10 and 12)

The New Lenox Board of Trustees met on March 27, 2007 to consider the Plan

Commission's recommendation in favor of the development.  Five persons addressed the Board,

two in favor of the project, two opposed, and one who was neither for nor against it.  (March 27,

2007 Board Minutes at 2-3) (Ex. M)  The Board considered the matter and approved the special

use permit 4-1.  (*Id.* at 11)

### Rubloff's and McVickers' Amended Complaint

On June 24 2010, plaintiffs filed their Amended Complaint against Saint Consulting and

SuperValu.  (Am. Cmplt. ¶ 1)  Rubloff claims it "received [] materials" indicating that Saint

Consulting "incited" and "orchestrated" the aforementioned opposition to the Mundelein and

New Lenox shopping centers.  (*Id.* ¶¶ 1, 24)  The Amended Complaint does not indicate how

plaintiffs received such materials, but Saint Consulting has filed suit against a former employee,

Crystal Litz, in the United States District Court for the District of Massachusetts, alleging that

Ms. Litz improperly supplied the materials to Rubloff.  (Verified Complaint and Jury Demand,

*Saint Consulting Group v. Litz*, No. 1:10-cv-10990 (D. Mass.) ¶¶ 24-26)  (Ex. N).  Rubloff has

disclosed "certain of these materials" to McVickers.  (Am. Cmplt. ¶ 25)

The Amended Complaint declares it is the first stage of a two-stage legal offensive that

some unidentified faction of the plaintiffs might bring against Saint Consulting for its alleged

support for and encouragement of the citizen petitioning efforts described above:

> … Plaintiffs … have possession of these materials and, if permitted by the Court,
> intend to amend their complaint in this action to assert claims based on them
> against SuperValu and Saint Consulting.

(*Id.*)  This possible future suit is the focus of the Amended Complaint.  Indeed, as multiple

allegations attest, it is the reason plaintiffs are seeking a declaration with regard to "the

materials":

- "… Plaintiffs seek a judicial declaration that no … protection exists to prevent the use of
  the materials at issue in any litigation that ***might be brought*** by Plaintiffs against
  SuperValu and Saint Consulting."  (*Id.* ¶ 5; emphasis added)

- "… as reflected in the materials at issue, ***some or all*** of the Plaintiffs ***believe*** they have
  numerous claims ***to assert*** against SuperValu and Saint Consulting…."  (*Id.* ¶ 26;
  emphasis added)

- "… Plaintiffs believe that there is nothing to prevent the use of these materials in prosecuting claims against SuperValu and Saint Consulting." (*Id.* ¶ 30)

- "Resolution of … any claims of trade secret … attaching to the materials at issue will promote resolution of Plaintiffs' ***underlying claims*** against SuperValu and Saint Consulting." (*Id.* ¶ 32; emphasis added)

- "There is substantial controversy … as to whether Plaintiffs' ***retention of these materials and a use of them in litigation against Defendants*** is wrongful…." (*Id.* ¶ 35; emphasis added)

-  "An actual controversy exists for Plaintiffs because they have a right that is capable of being affected; specifically their ability to ***retain the materials in their possession and to rely upon them in asserting their claims against Defendants.***" (*Id.* ¶ 37; emphasis added)

The suit that some plaintiffs intend to file will seek damages in the "tens of millions of dollars."

(*Id.* ¶ 26)

Plaintiffs assert three so-called causes of action against Saint Consulting: Count I, declaratory relief; Count II, negligent spoliation of evidence; and Count III,  injunctive relief.

The relief sought by plaintiffs relates entirely to the ***potential*** litigation some of them ***might*** file in the future:

- Count I: a judicial declaration that they may use the materials in the lawsuit they might bring (*Id* ¶ 38);

- Count II: damages for the alleged destruction of documents that allegedly pertain to the lawsuit plaintiffs might bring and might lose (*Id.* ¶ 47-49; "evidence that ***might have*** conclusively established crucial facts in Plaintiffs' ***anticipated*** claims," "***in the event*** Plaintiffs are unable to prove their claims," and "***in the event*** Plaintiffs are unable to prove their claims against Defendants, Plaintiffs ***will have been*** injured.")[5]; and

- Count III: an injunction prohibiting defendants from destroying materials that pertain to the lawsuit plaintiffs might bring in the future.  (*Id.* ¶ 55; referencing "anticipated claims").

---

[5] All emphasis added.

## LEGAL STANDARD ON A MOTION TO DISMISS

Dismissal under Federal Rule of Civil Procedure 12(b)(1) is warranted where a court lacks subject matter jurisdiction over an action. *Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 554 (7th Cir. 1999). Plaintiffs bear the burden of establishing that jurisdictional requirements have been met. *Kontos v. United States Dep't of Labor*, 826 F.2d 573, 576 (7th Cir. 1987).

Dismissal under Federal Rule of Civil Procedure 12(b)(6) is warranted where a complaint fails to "actually suggest that the plaintiff has a right to relief." *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 777 (7th Cir. 2007) (*citing Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 561-62 (2007)). Conversely, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (*citing Twombly*, 550 U.S. at 547). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* "Conclusory statements of law" and "unwarranted inferences" are insufficient to defeat a motion to dismiss. *N. Trust Co. v. Peters*, 69 F.3d 123, 129 (7th Cir. 1995).

## ARGUMENT

The Amended Complaint should be dismissed in its entirety. Count I should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1) because it is predicated on a hypothetical future action and is not ripe for decision. Even if the Court were to assume, solely for the purpose of argument, the existence of a live controversy over the possible admissibility of the documents in question, Count I is barred by the Illinois Citizen Participation Act ("CPA"), 735 ILCS 110/1 *et seq.*, because it is based on alleged acts by Saint Consulting in furtherance of its constitutional rights to petition, speech, association, and participation in government. Count I also is barred by the *Noerr-Pennington* doctrine because it arises out of alleged acts by Saint Consulting that implicate its First Amendment rights to petition the government for a redress of

grievances.  Counts II and III should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) because plaintiffs have not properly pled causes of action for negligent spoliation of evidence and injunctive relief.

## I.   COUNT I SHOULD BE DISMISSED BECAUSE IT IS PREDICATED ON A HYPOTHETICAL FUTURE ACTION AND IS NOT RIPE FOR DECISION

Plaintiffs have not sufficiently pled a cause of action for declaratory relief under 28 U.S.C. § 2201.  Rule 2201(a) states, "[i]n a case of *actual controversy* within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration . . ." (emphasis added).  The Amended Complaint fails to satisfy the basic requirements for seeking declaratory judgment under the Rule and should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1).

There is no actual controversy here.  In *MedImmune, Inc. v. Genentech, Inc*., the Supreme Court held that for an actual controversy to exist, "the dispute [must] be 'definite and concrete, touching the legal relations of parties having adverse legal interests'; and that it be 'real and substantial' and 'admi[t] of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.'"  549 U.S. 118, 127 (2007) (quoting *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240-41 (1937)).  Here, plaintiffs fail to establish a controversy that is "definite and concrete" or "real and substantial."  *Id.*  To be sure, they cite a May 10, 2010 letter (Am. Cmplt. ¶¶ 4, 28, 29), but the declaration they seek does not arise from that letter.

Instead, plaintiffs repeatedly state that a declaration is needed for litigation they *might* file.  (Am. Cmplt. ¶¶ 5, 26, 30, 32, 35, 37, 38)  Indeed, plaintiffs  admit that not all of them might have claims to bring: "*some* or all of the Plaintiffs believe they have numerous claims…." (*Id.* ¶ 26; emphasis added)  Instead of an actual controversy therefore, some of the plaintiffs have

presented this Court with a disembodied legal question, unconnected to any ongoing litigation by either party. *See, e.g., Valley Forge Christian Coll. v. Ams. United for Separation of Church and State, Inc.*, 454 U.S. 464, 471 (1982) (holding that under Article III of the Constitution, the court may only hear cases involving present cases and controversies); *see also Urantia Found. v. C. I. R.*, 684 F.2d 521, 525 (7th Cir. 1982) ("It is settled law that an actual controversy, in the context of declaratory judgment actions, must be one which exists in fact and not one which may occur in the future"). Count I of the Amended Complaint raises a question that need be answered only if and when plaintiffs – or some subset of them – actually bring suit.

The hypothetical lawsuit on which Count I is predicated is so tenuous, contingent, ephemeral, and unripe that plaintiffs have no standing to assert it. In order to have standing, plaintiffs must demonstrate that they have suffered an injury that is both "concrete and particularized" and "actual or imminent." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992); *Bolden v. Stroger*, No. 03 C 5617, 2005 WL 283419, at *3 (N.D. Ill. Feb. 1, 2005) (plaintiffs may not pursue declaratory judgment against defendants where the alleged injuries are "hypothetical and speculative, not concrete, particularized, and actual or imminent") (internal quotations omitted). The injury "must be concrete in both a qualitative and temporal sense," *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990), and the complaint must have "more than labels and conclusions." *Twombly*, 550 U.S. at 545.

Plaintiffs make no such showing in their Amended Complaint. Rather, plaintiffs plead in conclusory generalities and speak only of rights that are "capable of being affected" if and when they choose to assert claims against defendants. (Am. Cmplt. ¶ 37) Consequently, the speculative, hypothetical, and contingent harm alleged here is so vague that plaintiffs lack standing to assert it. *See George v. Kraft Foods Global, Inc.*, 251 F.R.D. 338, 345 (N.D. Ill.

2008) (citing *Port Washington Teachers' Ass'n v. Bd. of Educ. of the Port Washington Union Free Sch. Dist.,* 478 F.3d 494, 498 (2d Cir. 2007)) (holding that to demonstrate standing, a party must establish, *inter alia,* that "harm is actual or imminent, rather than conjectural or hypothetical"); *Indiana Right to Life, Inc. v. Shepard,* 507 F.3d 545, 549 (7th Cir. 2007) ("To have standing, a plaintiff must have a cognizable injury that is causally connected to the alleged conduct and is capable of being redressed.")  Underscoring this lack of standing is plaintiffs' admission that they do not know what faction of them might have a future claim.  (Am. Cmplt. ¶ 26)

## II.  COUNT I SHOULD BE DISMISSED BECAUSE SAINT CONSULTING'S ALLEGED ACTIONS ARE PROTECTED FROM LIABILITY UNDER THE FIRST AMENDMENT

The hypothetical suit that some of the plaintiffs might bring is on even shakier ground than the Amended Complaint lets on.  Plaintiffs must know that a lawsuit seeking tens of millions of dollars for the "incitement" and "orchestration" of petitions for redress flies in the face of First Amendment.  Indeed, the only way plaintiffs could justify such a suit is by fitting within the narrow sham exception to the Illinois Citizen Participation Act, 735 ILCS 110/1 *et seq.*, and the *Noerr-Pennington* doctrine.  As demonstrated in Sections II. A. and B., plaintiffs cannot come close to invoking this exception because the objections and litigation they complain about sought real relief from the Villages of Mundelein and New Lenox and the Lake County Circuit Court.  Out of respect for the First Amendment, that is all the law requires.  And, once it is established, Saint Consulting's subjective motivation is wholly irrelevant. Subjective motivation, however, is all that plaintiffs have.  Hence the mantra of "incitement" and "orchestration."

Unable to overcome the First Amendment and unable to sustain the heavy substantive burden of pleading that the real petitioning of local governments and a Circuit Court were merely

shams, they resort to mere labels ("dirty tricks" "sham litigation") and have tried to split their

cause of action.  Plaintiffs' strategic choice has wrought the bizarre and contorted two-headed

Hydra now confronting this Court.  Stage 1: filing this declaratory judgment action predicated on

a hypothetical suit and asking for rulings on the admissibility of documents in that hypothetical

suit.  Stage 2: actually filing a suit on the merits, but only if plaintiffs like the result in Stage 1.

For the reasons set forth above, this is too speculative to sustain a cause of action.

For the reasons set forth below, even this premature attempt to seize control of these

documents violates the First Amendment.  Illinois' Citizen Participation Act presumes that a

lawsuit based on, relating to, or in response to any First Amendment action is harmful to speech,

association, and petition for redress and, therefore, mandates dismissal of such a suit and the

award of attorneys' fees and costs.  The *Noerr-Pennington* doctrine likewise protects efforts to

petition government for redress.  In addition, Saint Consulting has a First Amendment privacy

interest in the documents.  And plaintiffs' litigation two-step makes it clear that, to the extent

plaintiffs – contrary to fact – have pled a justiciable claim, their attempt to use these documents

should be viewed as one with their announced intention to punish Saint Consulting for allegedly

exercising its First Amendment rights to speak, associate and petition for the redress of

grievances.  It is to the First Amendment reasons for dismissal that this memorandum now turns.

A.    **Count I Should Be Dismissed Because Saint Consulting's Alleged Actions Are Protected From Liability Under The Illinois Citizen Participation Act**

1.    **The CPA Protects Saint Consulting's First Amendment Rights From Plaintiffs' Censorious Suit**

Even if one were to assume the existence of a live controversy, Count I should be

dismissed in its entirety because plaintiffs' claims are barred by the Illinois Citizen Participation

Act, 735 ILCS 110/1 *et seq.*  Signed into law on August 28, 2007, the CPA recognized that

lawsuits were being used to discourage citizens from the "valid exercise of their constitutional

rights to petition, speak freely, associate freely, and otherwise participate in and communicate

with government."  735 ILCS 110/5.  The Illinois General Assembly noted a "disturbing increase

in lawsuits termed 'Strategic Lawsuits Against Public Participation' in government or 'SLAPPs'

as they are popularly called" and made them illegal.  *Id.*

    In response, the General Assembly made a CPA defense available for use in any motion –

such as this motion to dismiss –  that seeks to dispose of a claim – such as the Amended

Complaint –  that is "based on, relates to, or is in response to any act or acts of the moving party

in furtherance of the moving party's rights of petition, speech, association, or to otherwise

participate in government."  735 ILCS 110/15.

    These rights are so valuable that the CPA explicitly states that a party's motives for

speaking, associating, or petitioning government are completely irrelevant: "Acts in furtherance

of the constitutional rights to petition, speech, association, and participation in government are

immune from liability, ***regardless of intent or purpose***, except when not genuinely aimed at

procuring favorable government action, result, or outcome."  735 ILCS 110/15 (emphasis

added)).  The General Assembly intended the CPA to be "construed liberally to effectuate its

purposes and intent fully," 735 ILCS 110/30, and its protections extend to corporations.  735

ILCS 110/10.

### 2.    Saint Consulting's Alleged Actions Are Immunized Under The CPA

#### a.    Count I Falls Within the CPA Because it is Based on Acts in Furtherance of Saint Consulting's First Amendment Rights

    Assuming the Amended Complaint's factual allegations are true, Saint Consulting

"incited" or "orchestrated" citizens of Mundelein and New Lenox to petition their leaders and

judges in opposition to massive shopping centers in their communities.  (Am. Cmplt. ¶¶ 6, 23,

24)  Inciting others to political action or helping them orchestrate their political efforts, including

14

petitions to the judicial branch of government, is the very definition of protected First

Amendment activity, as numerous courts have held.  *White v. Lee*, 227 F.3d 1214, 1226-1227

(9th Cir. 2000) (state court challenge to zoning board's grant of a permit was protected under the

First Amendment); *Westfield Partners, Ltd. v. Hogan*, 740 F. Supp. 523, 525-526 (N.D. Ill.

1990) (landowners' petitioning of township officials was absolutely privileged under the First

Amendment, where a real estate developer sought to impose liability on landowners for

impairing plaintiff's proposed development); *Christian Gospel Church, Inc. v. City & County of*

*San Francisco*, 896 F.2d 1221, 1226 (9th Cir.), *cert denied*, 498 U.S. 999 (1990), *superseded on*

*other grounds by* 42 U.S.C. § 2000(e) (neighbors who opposed a church's zoning permit

application "by circulating a petition, testifying before the Planning Commission and writing

letters to the editor" were "fully protected by the first amendment"); *Gorman Towers, Inc. v.*

*Bogoslavsky*, 626 F.2d 607, 614 (8th Cir. 1980) (where developer sought to impose liability on a

group of citizens for an alleged conspiracy with city officials to prevent the construction of

plaintiff's building, court held that the citizens were absolutely privileged by the First

Amendment to petition for the zoning amendment which caused developer's damages).[6]

The Amended Complaint also alleges that Saint Consulting associated with individuals

and SuperValu in common opposition to plaintiffs' application for special use permits.  (Am.

Cmplt. ¶¶ 23, 24)  This too is protected by the First Amendment.  *See Roberts v. United States*

*Jaycees*, 468 U.S. 609, 622 (1984) ("[I]mplicit in the right to engage in activities protected by the

First Amendment [is] a corresponding right to associate with others in pursuit of a wide variety

of political, social, economic, educational, religious, and cultural ends."); *NAACP v. Button*, 371

---

[6] The protection afforded by the First Amendment "extends not only to petitioning for affirmative relief but also to petitioning in opposition to applications for relief by others."  *Herr v. Pequea Twp.*, 274 F.3d 109, 115 (3d Cir. 2001), abrogated on other grounds by *United Artists Theatre Circuit, Inc. v. Twp. Of Warrington, Pa.*, 316 F.3d 392, 400 (3d Cir. 2003).

U.S. 415, 428-29 (1963) (striking down statute because it violated First Amendment right of association of the NAACP, a corporation, by prohibiting it from assisting individuals seeking legal redress for infringement of constitutional rights).  These First Amendment rights extend to the provision of financial support.  *See Citizens United v. Fed. Election Comm'n*, 130 S.Ct. 876, 912-13 (2010) (statute barring corporations from using general treasury funds to make independent expenditures that advocate the election or defeat of a political candidate violated corporation's First Amendment right to speech); *First Nat'l Bank of Boston v. Bellotti,* 435 U.S. 765, 795, *reh'g denied*, 438 U.S. 907 (1978) (striking down state statute because it violated corporation's First Amendment right to speech by prohibiting corporate expenditure to influence referendum vote).

The First Amendment protection given to petitioning and association extends to the funding of litigation by a non-party.  *Baltimore Scrap Corp. v. David J. Joseph Co*., 237 F.3d 394, 401 (4th Cir.), *cert. denied*, 533 U.S. 916 (2001); *Liberty Lake Invs., Inc. v. Magnuson*, 12 F.3d 155, 157-59 (9th Cir. 1993), *cert. denied*, 513 U.S. 818 (1994); *Opdyke Inv. Co. v. City of Detroit*, 883 F.2d 1265, 1273 (6th Cir. 1989).  *Baltimore Scrap* is instructive.  In that case, a scrap metal company sued a competitor and related entities under various antitrust statutes and common law tort theories.  *Baltimore Scrap*, 237 F.3d at 398.  Notably, these are the very same theories that some of the plaintiffs in this case are allegedly mulling over.  (Am. Cmplt. ¶ 26) Like plaintiffs' claims here, the *Baltimore Scrap* claims arose out of allegations that defendants – in an effort to prevent or delay a competitor's entry into the market – surreptitiously funded litigation by citizen groups challenging the approval of plaintiffs' zoning permit.  *Id*. at 396.  In affirming the district court's grant of summary judgment for defendants, the appellate court held that the First Amendment protected the funding of others' petitioning:

> The First Amendment freedoms of petitioning and of association protect groups who for whatever reason want to contribute to a law-suit openly or to stand apart from public view while another party files a lawsuit, assuming no rule or statute independently requires disclosure of the aid.

*Id*. at 401.  Every act of incitement or orchestration on which Count I is based, therefore, is an act in furtherance of Saint Consulting's First Amendment rights.

> **b.    Count I Falls Within the CPA Because it is "Based On," "Relates To," and "Is In Response To" Acts in Furtherance of Saint Consulting's First Amendment Rights**

Count I is "based on," "relates to," and "is in response to" Saint Consulting's actions in furtherance of the petitioning and associating described above for two reasons.  First, Count I seeks a declaration that plaintiffs may retain and use the documents at issue to sue Saint Consulting.   (Am. Cmplt. ¶¶ 5, 25, 26, 32, 36-38)  By its very terms, this requested declaration falls within the CPA because it seeks to invade the First Amendment privacy that attaches to documents that allegedly describe Saint Consulting's petitioning and associational activity.

A long line of Supreme Court decisions establish that the First Amendment rights to speech and association carry with them constitutional protection for the privacy of the speaker.  *NAACP v. Alabama*, 357 U.S. 449, 462 (1958) (vital relationship exists between freedom to associate and privacy in one's associations); *Shelton v. Tucker*, 364 U.S. 479, 485-86 (1960) (compelling disclosure of associational ties impairs the "right of free association, a right closely allied to freedom of speech and a right which, like free speech, lies at the foundation of a free society").  Following these cases, this District has held that the "associational rights" of members and prospective members precluded discovery of a "church's" membership lists and information regarding the status of members.  *Anderson v. Hale*, 198 F.R.D. 493, 494 (N.D. Ill. 2000).

Plaintiffs' requested declaration asks this Court to permit them to use the materials in a potential lawsuit for the stated purposes of exposing Saint Consulting's alleged association with

17

individuals who spoke up at Plan Commission meetings, with persons who spoke up at Village Board meetings, with persons who petitioned the Lake County Circuit Court in opposition to actions and decisions of the Mundelein Commission and Board, and others.  Any resolution of plaintiffs' claims would necessarily "relate[] to" actions taken by Saint Consulting in furtherance of its First Amendment rights of speech and association, as it requires the Court to determine the scope of Saint Consulting's right to privacy when exercising its speech and association rights. *See Alabama*, 357 U.S. at 462 (holding that the "[i]nviolability of privacy in group association may in many circumstances be indispensable to preservation of freedom of association").

Second, plaintiffs' requested declaration is based on Saint Consulting's acts in furtherance of its First Amendment rights because Count I places Saint Consulting at risk of sustaining monetary damages for exercising those rights.  Plaintiffs admit that theirs is a two-part strategy to punish Saint Consulting financially.  The first step is the declaration that comprises Count I of this action.  The second step is amending the Amended Complaint to seek "tens of millions of dollars" in damages:  "[Plaintiffs] … intend to amend their complaint in this action to assert claims based on them against SuperValu and Saint Consulting."  (Am. Cmplt.  ¶ 25) Having admitted that any relief granted by the Court on Count I is a springboard to additional monetary claims, plaintiffs have no basis for claiming their requested declaration is not based on acts of Saint Consulting that were in furtherance of its First Amendment rights.

Because Count I is a "claim [that] is ***based on, relates to, or is in response to*** any act or acts of the moving party ***in furtherance*** of" Saint Consulting's constitutional rights of petition, speech, association, and participation in government," the CPA protects Saint Consulting's alleged conduct here.  735 ILCS 110/15 (emphasis added).  The CPA, therefore, mandates dismissal of Count I.

18

3.     **This Court Should Award Saint Consulting Its Attorneys Fees And Costs**

Because of the importance of deterring lawsuits like this one, the CPA not only provides for expeditious dismissal, but mandates the award of attorneys' fees and costs to a party who successfully brings a motion to dismiss under the CPA.  735 ILCS 110/25.  Accordingly, Saint Consulting is entitled to attorneys' fees and court costs.

B.     **Count I Should Be Dismissed Because Saint Consulting's Alleged Actions Are Immune From Liability Under the *Noerr-Pennington* Doctrine**

Count I of the Amended Complaint also should be dismissed under the *Noerr-Pennington* doctrine.  *E.R.R. Presidents Conf. v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 145, *reh'g denied*, 365 U.S. 875 (1961); *United Mine Workers of Am. v. Pennington*, 381 U.S. 657, 670 (1965).

The *Noerr-Pennington* doctrine safeguards the First Amendment right "to petition the Government for a redress of grievances," by immunizing "effort[s] to influence public officials ***regardless of intent of purpose***."  *Pennington*, 381 U.S. at 670 (emphasis added).  The Supreme Court has applied the *Noerr-Pennington* doctrine to grant immunity from suit not only to those who petition elected officials or law makers, but also to those who petition administrative agencies and the courts.  *Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 57 (1993); *California Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 510 (1972).  Under the *Noerr-Pennington* doctrine, a party cannot be liable for injuries that indirectly result from its petitioning activity, even if the objective of such activity was to obtain a competitive advantage.  *City of Columbia v. Omni Outdoor Adver., Inc.*, 499 U.S. 365, 380-81 (1991).

Though originating in the antitrust context, the *Noerr-Pennington* doctrine has been expanded beyond those laws as an application of the First Amendment's speech and petitioning clauses.  *New West, L.P. v. City of Joliet*, 491 F.3d 717, 722 (7th Cir. 2007); *Frayne v. Chicago*

*2016*, No. 08 C 5290, 2009 WL 65236, at *3 (N.D. Ill. Jan. 8, 2009) (slip copy) (doctrine

"originated in the antitrust context but applies generally"); *Westfield Partners,* 740 F. Supp. at

526 ("The application of the *Noerr-Pennington* doctrine has been applied outside the narrow

confines of antitrust suits and has been used to protect citizen's communications with the

government in a wide variety of cases").

      Plaintiffs' Count I arises out of alleged activity by Saint Consulting that the *Noerr-*

*Pennington* doctrine is designed to protect.  Objections to local government zoning decisions are

protected under the *Noerr-Pennington* doctrine.  *Westfield Partners*, 740 F. Supp. at 526 ("Most

notably, [*Noerr-Pennington*] has been applied to shield citizens from liability for petitions to a

zoning board under §1983-conduct similar to that engaged in by defendants"); *White*, 227 F.3d at

1232-33 (state court lawsuit filed by individuals challenging zoning board's grant of a permit

was protected under First Amendment pursuant to *Noerr-Pennington* immunity).  In addition, it

is well established that litigation and conduct incident to litigation constitutes petitioning activity

protected by the *Noerr-Pennington* doctrine.  *See California Motor Transp.*, 404 U.S. at 510

("The right of access to the courts is indeed but one aspect of the right of petition").  Plaintiffs

fail to allege any activities undertaken by Saint Consulting that would fall outside the protections

of the *Noerr-Pennington* doctrine.

      Plaintiffs use the phrase "sham litigation" (Am. Cmplt. ¶¶ 6, 24, 26, 41) as if its repeated

invocation insulates the Amended Complaint from *Noerr-Pennington*. The *Noerr-Pennington*

doctrine's limited exception for "sham" litigation, however, does not apply here.  "A 'sham'

situation involves a defendant whose activities are not genuinely aimed at procuring favorable

government action at all, not one who genuinely seeks to achieve his governmental result, but

does so through improper means."  *Omni*, 499 U.S. at 380 (internal citations and quotations

omitted).  *Accord, Aida Food & Liquor, Inc. v. City of Chicago*, No. 03 C 4341, 2004 WL 719663, at *9 (N.D. Ill. March 31, 2004) (activities "genuinely interested in influencing government action" are not shams).  Here, there is no allegation that Saint Consulting's alleged actions were not genuinely aimed at achieving a governmental result.  To the contrary, plaintiffs specifically allege that Saint Consulting's actions sought to "***defeat*** or otherwise delay" plaintiffs' developments.  (Am. Cmplt. ¶¶ 1, 40, 41, 45; emphasis added)

Where "sham litigation" is alleged, a two-part test guides the Court.  First, the lawsuit must be "objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits."  *Prof'l Real Estate Investors*, 508 U.S. at 60.  ***Only*** if and when this first prong is met, does the litigant's subjective motivation become relevant.  *Id.*; *see also Mercatus Group LLC v. Lake Forest Hosp.*, 528 F. Supp. 2d 797, 808 (N.D. Ill. 2007) ("A court should proceed to the second part of the test only if the suit is found to be objectively baseless").

Plaintiffs, however, have failed to plead ***facts*** that plausibly establish that the litigation advanced by Mundelein residents was "objectively baseless."[7]  Far from being baseless, the Lake County lawsuits proceeded to an 11-day bench trial.  (Lake County Order at 1; Ex. K)  And at no point before, during, or after trial did any of the defendants challenge the suits as baseless, frivolous, or interposed to cause unnecessary delay under Illinois Supreme Court Rule 137.  Furthermore, Judge Hoffman's 27-page opinion concluded that a different board might have

---

[7] Alleging "sham litigation" pleads a legal conclusion, not a fact.  *See Premier Elec. Const. Co. v. Int'l Broth. of Elec. Workers*, 627 F. Supp. 957, 966 (N.D. Ill. 1985), judgment rev'd on other grounds, *Premier Elec. Constr. Co. v. Nat'l Elec. Contractor's Ass'n*, 814 F.2d 358 (7th Cir. 1987) (dismissal proper where "complaint does not adequately allege the elements of the sham litigation exception"); *Spanish Int'l Commc'ns Corp., Sin, Inc. v. Leibowitz*, 608 F. Supp. 178, 182-84 (S.D. Fla.), *aff'd*, 778 F.2d 791 (11th Cir. 1985) ("Plaintiffs' Amended Complaint fails to state facts, as opposed to legal conclusions, which would invoke the 'sham exception' to Noerr-Pennington immunity…Plaintiffs have attempted to invoke the 'sham exception' by repeating talismanic phraseology").

reached a different conclusion about whether to allow the development to go forward.  (*Id.* at 27)

In short, the Amended Complaint and the public record establish that the litigation relating to the

Mundelein shopping center was not "objectively baseless."  Count I, therefore, should be

dismissed under the *Noerr-Pennington* doctrine.

## III.     COUNT II SHOULD BE DISMISSED BECAUSE THERE IS NO INDEPENDENT CAUSE OF ACTION FOR NEGLIGENT SPOLIATION OF EVIDENCE

In Illinois, "an action for negligent spoliation of evidence is not an independent cause of

action but it is a derivative action that arises out of other causes of action, including a negligence

cause of action."  *Babich v. River Oaks Toyota*, 879 N.E.2d 420, 426 (Ill. Ct. App. 2007), *appeal*

*denie*d, 882 N.E.2d 76 (Ill. 2008);  *Perks v. County of Shelby*, No. 09-3154, 2009 WL 2777882,

at *7 (C.D. Ill. Aug. 31, 2009) ("[I]t is apparent that negligent spoliation of evidence cannot

survive as an independent claim").  Plaintiffs, however, have attempted to plead negligent

spoliation as a stand-alone claim.  (Am. Cmplt. ¶¶ 39-49)  Because Illinois does not recognize

such a cause of action, this Court should dismiss Count II of the Amended Complaint.

Even if plaintiffs had asserted causes of action to which their negligent spoliation of

evidence claim could attach, plaintiffs have failed to properly plead the elements of such a

claim.  To sufficiently plead, a plaintiff must allege: (1) a duty; (2) a breach of that duty; and (3)

damages proximately caused by that breach.  *Olivarius v. Tharaldson Prop. Mgmt., Inc.*, 695 F.

Supp. 2d 824, 829 (N.D. Ill. 2010) (citing *Dardeen v. Kuehling,* 821 N.E.2d 227, 231 (Ill. 2004)).

The Amended Complaint fails to allege that Saint Consulting had a duty to plaintiffs.  In

fact, the Northern District of Illinois consistently has recognized that there is no general duty to

preserve evidence.  *Id.* (citing *Boyd v. Travelers Ins. Co.,* 652 N.E.2d 267, 270 (Ill. 1995)).  A

duty to preserve evidence exists only when (1) it arises by agreement, contract, statute, special

circumstance, or voluntary undertaking, and (2) a reasonable person should have foreseen that

certain evidence at issue was material to a potential civil action.  *Id.*  A plaintiff is required to satisfy both prongs of this test.  *Id.*  Here, the Amended Complaint does not identify any contractual or other specific duty requiring Saint Consulting to preserve evidence.

Likewise, under the facts as pled, there is no reason to believe Saint Consulting could have "foreseen that certain evidence at issue was material to a potential civil action," as required under Illinois law.  *Id.*  The Lake County lawsuit certainly was not enough; none of the parties named in the instant action was even a party to that suit.  (Aug. 27, 2007 Complaint and Sept. 26, 2007 Complaint (Exs. I and J, respectively))  This is not surprising given that the Lake County litigation related entirely to the Village of Mundelein's failure to follow its zoning rules and had nothing to do with the subjective motivations of the litigants or what Saint Consulting allegedly did to incite or orchestrate them.  (*Id.*)  And as for the New Lenox project, the Amended Complaint fails to mention a single piece of litigation even referencing that development.  Thus, taking the Amended Complaint as true, there is no reason Saint Consulting should be held to a reasonable belief that documents relating to its alleged incitement or orchestration of the Lake County litigants would be material to that action.  As for the hypothetical legal action that an unidentified subset of the plaintiffs might bring (Am. Cmplt. ¶¶ 43), it strains credulity to claim that Saint Consulting should have foreseen a complaint that plaintiffs (or some faction of them) have not yet filed.

Finally, plaintiffs have not sufficiently pled the proximate cause element of their negligent spoliation claim.  Plaintiffs summarily assert that "[b]ut for defendants' destruction of evidence, plaintiffs had a reasonable probability of prevailing on their claims against SuperValu and Saint."  (Am. Cmplt. ¶ 46)  Plaintiffs, however, do not identify the claims to which they refer or the plaintiff(s) to which they belong.  In effect, plaintiffs are alleging that *if* some subset of

them filed a lawsuit, and *if* they lost, it ***may have been*** because of defendants' alleged negligent spoliation of evidence.  That is insufficient under Illinois law.  *Boyd*, 652 N.E.2d at 271 ("a plaintiff must allege sufficient facts to support a claim that the loss or destruction of evidence ***caused the plaintiff to be unable to prove*** an underlying lawsuit") (emphasis in original).  As recently as April 2010, a Northern District of Illinois court held that a spoliation claim was "deficient because it [was] based on no more than a threat of future inability to prove one or more of [plaintiff's] claims based on an assumption that information ha[d] been irretrievably lost."  *Motorola, Inc. v. Lemko Corp.*, No. 08 C 5427, 2010 WL 1474795, at *6 (N.D. Ill. April 12, 2010).  A "threat of future inability" and "an assumption" regarding destruction of evidence is all plaintiffs plead here.  *Id.*  Plaintiffs have not filed an underlying lawsuit, nor is there any indication from the Amended Complaint of the extent of plaintiffs' hypothetical loss as a result of not receiving the documents at issue.  Accordingly, plaintiffs' claim for negligent spoliation of evidence should be dismissed.

## IV.   COUNT III SHOULD BE DISMISSED BECAUSE "INJUNCTIVE RELIEF" IS NOT A CAUSE OF ACTION

Plaintiffs' injunctive relief count (Count III) fails because there is no cause of action for injunctive relief.  *Noah v. Enesco Corp.*, 911 F. Supp. 305, 307 (N.D. Ill. 1995) ("An injunction is a remedy, not a cause of action").  If Count III is interpreted as a remedy associated with plaintiffs' spoliation claim, Count III should be dismissed along with Count II. *Cygan v. Resurrection Med. Ctr.*, No. 04 C 4168, 2005 WL 4795018, at *2 (N.D. Ill. July 27, 2005) (dismissing claim for "Injunctive/Declaratory Relief" because it "depends entirely on the

viability of plaintiffs' other counts to survive").[8]  Because Count II is not viable, Count III

cannot stand.

## CONCLUSION

The Amended Complaint is predicated on a lawsuit that might or might not be filed by an

unknown collection of plaintiffs.  As such, it is not ripe for decision and should be dismissed.  To

the extent plaintiffs' complaint is justiciable, its requested declaration violates the First

Amendment to the United States Constitution and should be dismissed under Illinois' Citizen

Participation Act and the *Noerr-Pennington* doctrine.  Counts II and III should be dismissed

because they may not be pled as independent causes of action.  For the foregoing reasons, Saint

Consulting respectfully requests that the Court grant its Motion and dismiss the Amended

Complaint.

Saint Consulting also seeks attorneys' fees and costs under the Illinois' Citizen

Participation Act.

Date:  July 23, 2010                                    The Saint Consulting Group, Inc.

                                                       By:  /s/ *Craig A. Knot*
                                                            Craig A. Knot

                                                       Gregory H. Furda
                                                       Craig A. Knot
                                                       Caroline L. Schiff
                                                       SIDLEY AUSTIN LLP
                                                       One South Dearborn Street
                                                       Chicago, Illinois 60603
                                                       Ph:  (312) 853-7000
                                                       Fax: (312) 853-7036

---

[8] Count III also fails to meet the requirements any preliminary injunction must satisfy, namely that the case has some likelihood of success on the merits; plaintiff has no adequate remedy at law, and plaintiff will suffer irreparable harm if the injunction is not granted. *Lettuce Entertain You Enters., Inc. v. Leila Sophia AR, LLC*, -- F. Supp. 2d  --, 2010 WL 748169, at * 2 (N.D. Ill. 2010).

## <u>CERTIFICATE OF SERVICE</u>

I, Craig A. Knot, one of the attorneys for Defendant Saint Consulting Group, Inc., certify that on July 23, 2010, I caused a copy of the foregoing **MEMORANDUM OF LAW IN SUPPORT OF THE SAINT CONSULTING GROUP, INC.'S MOTION TO DISMISS** to be filed electronically with the Clerk of Court to be served by operation of the Court's electronic filing system to all counsel of record.

/s/ *Craig A. Knot*
Craig A. Knot

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| RUBLOFF DEVELOPMENT GROUP, INC., RUBLOFF MUNDELEIN LLC, MCVICKERS DEVELOPMENT LLC, MCVICKERS NEW LENOX LLC, MCVICKERS COOPER, LLC, MCVICKERS HICKORY CREEK, LLC, MCVICKERS TONNELL LLC, MCVICKERS WILLIAMS LLC, | ) ) ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) ) | Case No. 1:10-cv-3917 |
| v. | ) ) | |
| SUPERVALU, INC., d/b/a JEWEL-OSCO, and THE SAINT CONSULTING GROUP, INC., | ) ) ) ) | |
| Defendants. | ) | |

## DECLARATION OF CAROLINE L. SCHIFF

Pursuant to 28 U.S.C. § 1746, I, Caroline L. Schiff, hereby declare under penalty of perjury that the following is true and correct.

1.      On July 21, 2010, I obtained the following documents from the official Village of Mundelein website:

- Board of Trustee Minutes, June 11, 2007 (Ex. D)

- Board of Trustee Minutes, June 25, 2007 (Ex. E)

- Board of Trustee Minutes, July 9, 2007 (Ex. F)

- Board of Trustee Minutes, July 23, 2007 (Ex. G)

2.      I have also obtained certified copies of the foregoing documents directly from the Village of Mundelein; however, those copies are more difficult to read than the versions included as exhibits in The Saint Consulting's Motion to Dismiss.  The documents included in

the motion are identical in substance to the certified copies received from the Village of
Mundelein.

        3.      On July 19, 2010, I obtained the following document via email, which was
sent by the Village of New Lenox Planning and Development Department:

- Plan Commission Minutes, June 19, 2006 (Ex. L)

        4.      This document, attached as an exhibit to The Saint Consulting's Motion to
Dismiss, is a true and correct copy of the document provided via email.

Executed on:  July 23, 2010

Caroline L. Schiff

*Rubloff Development Group, Inc. v. SuperValu, Inc., et al.*

Index to Exhibits

| Exhibit | Description |
|---------|-------------|
| A | Mundelein Plan Commission Minutes, May 9, 2007 |
| B | Mundelein Plan Commission Minutes, May 23, 2007 |
| C | Mundelein Plan Commission Minutes, May 30, 2007 |
| D | Mundelein Board of Trustee Minutes, June 11, 2007 |
| E | Mundelein Board of Trustee Minutes, June 25, 2007 |
| F | Mundelein Board of Trustee Minutes, July 9, 2007 |
| G | Mundelein Board of Trustee Minutes, July 23, 2007 |
| H | Mundelein Certificate & Ordinance No. 07-07-46:  Ordinance Approving Development Concept Plan and Special Use Permit For Planned Unit Development / Mundelein Town Center |
| I | Complaint, *Ivanhoe Club Property Owner's Association, et al. v. Village of Mundelein, et al*, 07 CH 2210, Circuit Court of the Nineteenth Judicial District, Lake County, Illinois, August 27, 2007 |
| J | Complaint, *Acker, et al. v. Village of Mundelein, et al.,* 07 CH 2526, Circuit Court of the Nineteenth Judicial District, Lake County, Illinois, September 26, 2007 |
| K | Order from consolidated *Ivanhoe Club* and *Acker* cases, March 26, 2010 |
| L | New Lenox Plan Commission Minutes, June 19, 2006 |
| M | New Lenox Board of Trustee Minutes, March 27, 2007 |
| N | Complaint, *The Saint Consulting Group v. Litz,* 1:10-CV-10990, United States District Court, District of Massachusetts, June 24, 2010 |
| O | Notice of Appeal in consolidated *Ivanhoe* and *Acker* cases, July 21, 2010 |