```
IN THE UNITED STATES DISTRICT COURT
   FOR THE NORTHERN DISTRICT OF ILLINOIS
             EASTERN DIVISION
```

| | |
|---|---|
| **RUBLOFF DEVELOPMENT GROUP, INC. and RUBLOFF MUNDELEIN LLC,** <br><br> Plaintiffs/CounterDefendants, <br><br> AND <br><br> **McVICKERS DEVELOPMENT LLC, McVICKERS NEW LENOX LLC, McVICKERS COOPER LLC, McVICKERS HICKORY CREEK LLC, McVICKERS TONNELL LLC, and McVICKERS WILLIAMS LLC,** <br><br> Plaintiffs, <br><br> v. <br><br> **THE SAINT CONSULTING GROUP, INC.,** <br><br> Defendant/CounterPlaintiff. | Case No 10 C 3917 <br><br> Hon. Harry D. Leinenweber |

## MEMORANDUM OPINION AND ORDER

Before the Court are Cross-Motions for Summary Judgment on Count 1 of Plaintiffs Rubloff Development Group, Inc, Rubloff Mundelein LLC, McVickers Development LLC, McVickers New Lenox LLC, McVickers Cooper LLC, McVickers Hickory Creek LLC, McVickers Tonnell LLC, and McVickers Williams LLC's (hereinafter, the "Plaintiffs") First Amended Complaint against Defendant The Saint Consulting Group, Inc. (hereinafter, the "Defendant"), as well as Defendant's Motion for a Protective Order regarding certain documents. For the reasons stated below, Plaintiffs' Motion for

Summary is granted in part and denied in part, Defendant's Motion for Summary Judgment is granted in part and denied in part, and Defendant's Motion for a Protective Order is denied.

## I. **INTRODUCTION**

This case involves documents that Defendant claims Plaintiffs do not have the right to possess, or that should be under a protective order during this litigation. Plaintiffs had plans to build retail developments in Mundelein and New Lenox, Illinois (hereinafter, the "Developments"). Supervalu, Inc. ("Supervalu"), is a national grocery store chain that operates Jewel-Osco stores in the Chicago area. Defendant is a political consulting group that specializes in land use issues. Defendant's work includes generating and supporting community movements that oppose developments which include large-box retailers, such as Walmart stores.

In March 2007, Supervalu hired Defendant to cultivate and lead local community efforts to oppose Plaintiffs' Developments, which were planned to include Walmart stores. Defendant assigned its employee Leigh Mayo ("Mayo") to oversee its efforts with the Developments. For this assignment, Mayo assumed the pseudonym Greg Olson ("Olson"). As part of its consulting efforts, Defendant alleges that it retained attorney William Graft ("Graft") to represent it and local community members to support their opposition to the Developments. Plaintiffs deny this allegation, and claim that Graft was retained to represent only the community

members.  Supervalu authorized and paid for Graft's legal services, which included Graft representing Lake County community members before the Mundelein Plan Commission and Village Board, and filing lawsuits against the Village of Mundelein that related to the Mundelein development on behalf of the community members.  Neither Defendant nor Supervalu was a party to the Mundelein development litigation, which settled in January 2011.

Mayo stopped working for Defendant in April 2009.  In August 2009, Mayo started to provide information to Robert Brownson ("Brownson"), co-founder of Plaintiff Rubloff Development Group, about Defendant's work on the Developments.  Besides verbal descriptions of this activity, Mayo provided Brownson almost 3,000 pages of documents.  In May 2010, Brownson sent a letter to Supervalu CEO Craig Heckert and Steven Rogers of Supervalu's Board of Directors that addressed Defendant's activities in relation to the Mundelein development. On May 10, 2010, counsel for Defendant sent Brownson a letter that, in part, stated:  "It has come to [Defendant's] recent attention that your companies are in wrongful possession of hundreds of pages of [Defendant's] confidential, proprietary business information."  The letter demanded the return of all the documents.

Plaintiffs subsequently filed a three-count Complaint against Defendant and Supervalu on June 23, 2010, seeking a declaratory judgment that the documents they received from Mayo are not covered by any privilege, trade secret, or other protection, as well as

claiming spoliation of evidence and seeking an injunction. Plaintiffs filed their First Amended Complaint on June 24. The Court dismissed all counts in the First Amended Complaint against Supervalu, and the spoliation and injunctive relief claims against Defendant. Defendant has dismissed with prejudice its Third Party Complaint against Mayo. Plaintiffs and Defendant now both move for summary judgment on the sole remaining claim for declaratory relief, with Defendant also moving for a protective order regarding certain documents Plaintiffs currently possess.

## II. LEGAL STANDARD

Summary judgment is proper if "the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it could affect the outcome of the suit, and a dispute is genuine where the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In ruling on summary judgment, the Court does not weigh the evidence or determine the truth of the matter, but determines whether a genuine issue of material fact exists that warrants trial. *See id*. at 249. In making this determination, the Court must view all the evidence and draw any reasonable inferences therefrom in the light most favorable to the nonmoving party. *See Miller v. Am. Family Mut. Ins. Co.*, 203 F.3d 997, 1003 (7th Cir. 2000).

The moving party bears the burden of establishing the basis for its motion, together with evidence demonstrating the absence of any genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met this burden, the nonmoving party may not rest on mere allegations, but must present specific facts showing that a genuine issue exists for trial. *See Big O Tire Dealers, Inc. v. Big O Warehouse*, 741 F.2d 160, 163 (7th Cir. 1984). To support their position that a genuine issue of material fact does or does not exist, the parties may cite to materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, and interrogatory answers, or show that the materials in the record do or do not establish a genuine dispute. Fed. R. Civ. P. 56(c).

### III. **ANALYSIS**

While each party has identified five categories of documents in the contested material, their categorization systems vary. Both parties have offered a cogent and logical breakdown of the documents. The Court adopts Plaintiffs' categorization of the material for the purpose of this analysis, as they filed their Motion first. Plaintiffs divide the material into (1) publicly disseminated or publicly available materials; (2) Defendant's monthly reports concerning the Developments; (3) communications between Mayo and Brownson; (4) Defendant's project list; and (5) legal bills and communications involving attorneys. The documents

at issue in this case are Bates stamped RUBLOFF000001 through RUBLOFF002990. Defendant does not seek any protection for 000040-42, 000053, 000063, 000076-79, 000110-123, 000137-138, 000170, 000178-180, 000561-566, 000571, 000574-2901, and 002926-90, so the Court's analysis does not substantively address these documents.

### A. Public Materials

Of the material that Plaintiffs have categorized as public documents, Defendant asserts privilege over four pages: 000090-92 and 000095. The document in 000095 is the first page of a printed opinion from the Illinois Appellate Court. This is a public document, and it does not bear markings from an attorney that could possibly qualify it for a privilege. "[T]he threshold determination in any case involving an assertion of the work product privilege . . . is whether the materials sought to be protected from disclosure were in fact prepared in anticipation of litigation." *Binks Mfg. Co. v. Nat'l Presto Indus., Inc.*, 709 F.2d 1109, 1118 (7th Cir. 1983). This document does not appear to be related to litigation, so it cannot receive work product protection. Further, as a public document, it is not subject to attorney-client privilege.

The document in 000090 is a May 24, 2007, letter that Graft sent to Richard Edmunds, chairman of the Mundelein Plan Commission. The Court will address later whether Defendant can claim privilege for work Graft did on behalf of other clients. But even assuming

Defendant can generally assert such work product privilege, it cannot do so for this letter. Work product protection is not automatically waived when the material is sent to a third party, but to preserve this protection, the information must be "maintained in secrecy against the opponent." *Indus. Hard Chrome, Ltd. v. Hetran, Inc.*, No. 99-C-1716, 1999 WL 968424, at *1 (N.D. Ill. Oct. 18, 1999). In this letter, Graft wrote that he represents property owners opposed to the Mundelein Town Center development, about which the Mundelein Plan Commission was holding public hearings. Graft mailed the letter to a party involved in the dispute. As such, the letter does not have work product protection. The document in 000091-92 is a letter that attorney Charles Smith sent to Graft in response to Graft's May 24 letter. Work product protection does not attach to such a letter mailed to the party asserting the protection, as it did not produce the document. Because no privilege attaches to the documents that Plaintiff has classified as public materials, Plaintiffs' Motion for Summary Judgment is granted for them, and Defendant's Motion is denied.

**B. Defendant's Monthly Reports for the Developments**

The next contested documents are status reports that Defendant sent to Supervalu regarding the Developments (000001-39, 000043-52, 000054-57, and 002902-25). Defendant claims that portions of these reports comprise work product material. However, none of these documents were produced by an attorney for active or prospective

litigation, nor were they produced at the request of an attorney. Rather, they were written by Mayo, who worked under the direction and supervision of Jay Vincent ("Vincent"), Defendant's senior vice president of business development. Vincent then sent these reports to Joseph McKenna, Supervalu's vice president of real estate and store development. Defendant has not presented facts that an attorney was involved in any aspect of producing the reports. Work product protection is restricted to material obtained by or produced by adversarial counsel. *See Hobley v. Burge*, 433 F.3d 946, 949 (7th Cir. 2006). This protection does not extend to the material that Defendant seeks to protect here.

Further, a remote prospect of litigation does not suffice to qualify material as work product. *See Binks Mfg.*, 709 F.2d at 1118. While Defendant alleges that these reports were produced in part for legal purposes, it does not present facts that they were produced in anticipation of actual litigation. This creates another barrier for these reports to obtain work product protection.

Defendant also alleges that the maps on the front page of the reports constitute trade secrets, and can be retained by Plaintiff only during the pendency of this litigation under a protective order. The maps identify the location of the proposed Developments, and identify Jewel-Osco stores within five- and 10-mile radii of these sites. This case is before the Court under diversity jurisdiction, so the Illinois choice-of-law doctrine

applies. *See ECHO, Inc. v. Whitson Co.,* 52 F.3d 702, 707 (7th Cir. 1995). The parties agree that the Illinois Trade Secrets Act (the "ITSA") applies to the trade secrets analysis. As such, information qualifies as a trade secret if it "(1) is sufficiently secret to derive economic value, actual or potential, from not being generally known to other persons who can obtain economic value from its disclosure or use; and (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy or confidentiality." 765 ILCS 1065/2(d).

In regard to the secrecy of information, the ITSA "'precludes trade secret protection for information generally known or understood within an industry even if not to the public at large.'" *Learning Curve Toys, Inc. v. PlayWood Toys, Inc.*, 342 F.3d 714, 722 (7th Cir. 2003) (quoting *Pope v. Alberto-Culver Co.*, 694 N.E.2d 615, 617 (Ill. App. 1998)). Illinois courts generally use six factors in a trade secrets analysis: "(1) the extent to which the information is known outside of the [alleged trade secret holder's] business; (2) the extent to which the information is known by employees and others involved in the [alleged trade secret holder's] business; (3) the extent of measures taken by the [alleged trade secret holder] to guard the secrecy of the information; (4) the value of the information to the [alleged trade secret holder's] business and to its competitors; (5) the amount of time, effort and money expended by the [alleged trade secret holder] in developing the information; and (6) the ease or

- 9 -

difficulty with which the information could be properly acquired or duplicated by others." *Learning Curve Toys*, 342 F.3d at 722.

Here, Defendant does not allege that Supervalu ever signed a confidentiality agreement with it in regard to the monthly reports. If Defendant sends the products of its allegedly secret proprietary process of synthesizing information to its clients, it would presumably do so only under a confidentiality agreement if this report contains a trade secret. Defendant not taking such precautions factors against its trade secret claim.

Defendant also states that the process it used to create these maps is the subject of a United States patent application. A patent cannot be a trade secret, as it must include a written description of the invention. 35 U.S.C. § 112 ("The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same, and shall set forth the best mode contemplated by the inventor of carrying out his invention."). As such, Defendant cannot assert trade secret or work product protection over any portions of the monthly status reports. Plaintiffs' Motion for Summary Judgment for these reports is granted, and Defendant's Motions for Summary Judgment and for a Protective Order are denied.

**C. Communications Between Mayo and Brownson**

The next contested documents are e-mails between Mayo and Brownson (000058 and 000567-71). As an initial matter, Defendant does not claim any privilege to 000571, so Plaintiffs' Motion is granted for that document. Defendant argues that the e-mail in 000058 is protected by attorney-client privilege. "To be entitled to the protection of the attorney-client privilege, a claimant must show that the statement originated in confidence that it would not be disclosed, was made to an attorney acting in his legal capacity for the purpose of securing legal advice or services, and remained confidential." *Rounds v. Jackson Park Hosp. & Med. Ctr.*, 745 N.E.2d 561, 566 (Ill. App. 2001). The party asserting this privilege has the burden to present the Court with factual evidence to support its assertion. *See id.* One factor that the claimant must establish is that the statement remained confidential. *See Hyams v. Evanston Hosp.*, 587 N.E.2d 1127, 1130 (Ill. App. 1992). The e-mail in 000058 apparently relates to Graft's representation of Lake County community members in their opposition to the Mundelein Town Center development. Any potential attorney-client privilege between the community members and Graft can be asserted by Graft and these community members. Graft is not asserting any privilege before this Court, and the community members waived any attorney-client privilege in relation to all interactions they had with Graft and his law firm in a settlement agreement in their Illinois state court case against the Village of Mundelein

concerning the Mundelein development. Defendant, therefore, must rely on the common interest doctrine to succeed on its privilege claim to this e-mail.

In general, a privilege is waived when an attorney and his client communicate in the presence of a third person, or they voluntarily share this information with a third party. Where parties engage in a joint effort relating to a common legal interest, however, each party can assert privilege through the common interest doctrine in relation to communications that the other party has with an attorney. *See United States v. BDO Seidman, LLP*, 492 F.3d 806, 815-16 (7th Cir. 2007); *In re Aftermarket Filters Antitrust Litig.*, No. 08-C-4883, 2010 WL 4791502, at *2 (N.D. Ill. Nov. 18, 2010); *Pampered Chef v. Alexanian*, 737 F.Supp.2d 958, 964 (N.D. Ill. 2010) ("Parties may assert a common interest where they have an *identical*—not merely similar—legal interest in the subject matter of a communication and the communication is made in the course of furthering the ongoing, common enterprise.") (emphasis added). This common interest need not relate to litigation per se, but it must relate to a legal matter. *See Pampered Chef*, 737 F.Supp.2d at 965. Further, "both potential parties and parties who are not otherwise joined in litigation" may assert the common interest privilege. *Id*.

In this case, Defendant's privilege claim is flawed because Defendant did not share an identical legal interest as the Lake County community members Graft represented. Supervalu hired

Defendant to organize campaigns to oppose the Developments, and did so because of Defendant's experience in organizing land use opposition. As such, Defendant's interests lay in providing the best possible package of services to Supervalu. Part of these services included finding individuals and organizations in the vicinity of the Mundelein development that possessed cognizable legal interests in blocking the project. Primarily, these local parties were concerned about the impact that the development would have on their property values and aesthetics. Defendant presumably located and recruited these parties because they would have standing to lodge administrative petitions and objections with the Mundelein government, as well as file litigation, if required, in circuit court. Defendant did not own any land near the Mundelein development or have any property interest that would be affected by the development. It simply found the parties who possessed these interests. Then, to move forward with the legal prong of the package of services it provided to Supervalu, Defendant hired Graft to represent the local community members.

Defendant's privilege argument appears to rest on the assumption that because it provided Supervalu a package of services that included legal work, it possessed identical legal interests as the Lake County community members. Graft, however, signed individual engagement letters between his law firm and the community members. The affidavit from Graft states: "It was acknowledged and understood that Saint Consulting was my client in

addition to the landowner clients and that the attorney client privilege attached to communications between me, Saint Consulting, including Leigh Mayo, and the landowner clients." Graft Aff. ¶ 6. This affidavit muddles the scope of the attorney-client privilege that existed in regard to Graft's communications with the Mundelein community clients. The privilege, of course, exists for Graft and his firm and the community clients. But the fact that Defendant paid for these services does not make Defendant privy to this privilege. *See* Ill. Rules Professional Conduct Rule 5.4(c), *available at http://www.state.il.us/court/supremecourt/ rules/art_viii* ("A lawyer shall not permit a person who recommends, employs, or pays the lawyer to render legal services for another to direct or regulate the lawyer's professional judgment in rendering such legal services.").

Defendant certainly had an interest in the success of the community members' legal claims, in that the stalling or cessation of the Developments would help to bolster its reputation as a land use political consulting firm, which could be good for its business. But this business interest is not an identical *legal* interest as that possessed by the community members. The success or failure of the Mundelein development would not impact Defendant's property values, tax rates, community identity, or character of its property. Defendant did not actually cooperate with the community members toward a common legal goal. In fact, the Lake County community clients did not know about Defendant's

relationship to Graft, as this was intentionally kept secret. Graft Aff. ¶ 9. The community members also were not informed that Supervalu, through Defendant, paid for Graft's legal services. They knew Mayo by only his Olson pseudonym, and were given no indication that he worked for Defendant. Defendant cloaked itself in anonymity, primarily because this would help advance the political goals it sought. It cannot now claim that its work as a hired-gun to foment opposition to the Mundelein development provided it with identical legal interests as the Lake County community members.

The Lake County community members who could have asserted attorney-client privilege to this e-mail expressly waived this privilege in the settlement agreement entered in January 2011. The common interest doctrine simply does not apply to this document. Also, if Graft divulged communications that he had with his community clients to Defendant, without his clients' authorization, Graft may have violated the Illinois Rules of Professional Conduct. *See* Ill. Rules Professional Conduct Rule 1.6(a) ("[A] lawyer shall not, during or after termination of the professional relationship with the client, use or reveal a confidence or secret of the client known to the lawyer unless the client consents after disclosure."). Because Defendant cannot assert privilege over this e-mail, Plaintiffs' Motion for Summary Judgment is granted for 000058, and Defendant's Motion is denied.

Moving to 000567-70, Defendant argues that these e-mails contain confidential business information and should be covered by a protective order during this litigation. To obtain a protective order, Defendant must show "(1) the interest for which protection is sought is an actual trade secret or other confidential business information . . . , and that (2) there is good cause for the protective order." *Andrew Corp. v. Rossi*, 180 F.R.D. 338, 340 (N.D. Ill. 1998). The only argument that Defendant makes that these e-mails contain confidential business information is that they reference Defendant's Chicago-area project list. However, as discussed in the next section of this Opinion, the project list does not qualify as confidential information. Nothing else in these e-mails appears to be confidential. Accordingly, Plaintiffs' Motion is granted for these e-mails, and Defendant's Motion for a Protective Order is denied.

**D. Defendant's Project List**

The next category is a list of projects that Defendant performed for various grocery retailers in the Chicago area as of March 2009 (000572-73). Defendant argues that the list is confidential business information, and asks the Court to issue a protective order over it, which would restrict its access to parties and their counsel during the pendency of this litigation. The list includes the names of 36 projects (including those in Mundelein and New Lenox), the names of Defendant's clients, the

number of hours budgeted to each project, and what appears to be the names of the employees that Defendant assigned to each project. In arguing that this document contains confidential business information, Defendant states, "Saint has not publicized projects identified in this document, and there can be no dispute that Plaintiffs could not reconstruct such a list without being provided with Saint's confidential business information." Def.'s Br. Summ. J. 23. Further, in his affidavit, Vincent, Defendant's senior vice president of business development, states that "our clients and projects are not publicized." Vincent Aff. ¶ 4. Defendant also argues that Plaintiffs have not identified that the document contains information in the public domain.

Defendant's assertion that this document contains confidential information, however, does not satisfy its burden to obtain a protective order. Not "publicizing" a client or project is different from maintaining these projects as confidential business information. This is not simply an exercise in semantics. The verb "publicize" means "to bring to the attention of the public." *Merriam Webster's Collegiate Dictionary* 944 (10th ed. 1996). This implies proactively advertising a fact. Not publicizing information is materially different from maintaining information as confidential; it requires a different set of actions than keeping information confidential. Defendant does not satisfy the first element to obtain a protective order. Accordingly, Plaintiffs'

Motion for Summary Judgment is granted for this document, and Defendant's Motion for a Protective Order is denied.

**E. Legal Bills and Communications Involving Attorneys**

The final category of documents comprises communications between Graft and his law firm with the Lake County community members and Mayo, as well as invoices for Graft's work. As discussed above, the common interest doctrine does not extend the attorney-client privilege that existed between Graft and the community members to Defendant. The community members have waived this privilege, Graft does not assert it before this Court, and Defendant cannot step in their place and assert it.

The contested documents in this category include communications between Graft and the Lake County community members; communications between Graft and his law firm and Mayo (sent to him under the Olson pseudonym); and invoices and communications regarding billing that relates to Graft's representation of the Lake County community members. They are: 000058-62, 000064-66, 000067-68, 000069, 000070, 000071, 000072-74, 000075, 000080-81, 000082-83, 000084-86, 000087-88, 000089-92, 000093-95, 000096-98, 000099, 000100, 000101, 000102, 000105, 000106-07, 000108, 000109, 000124, 000125, 000126-28, 000129-33, 000134, 000135-36, 000139-40, 000157-58, 000159-60, 000161, 000162-64, 000165-66, 000167-68, 000169, 000171, 000172-175, 000176, 000177, 000180, 000181-91, 000192-202, 000203-13, 000214-15, 000216-32, 000233-43, 000244-45, 000246-47, 000248-65, 000266-90, 000291-92, 000293-302, 000303-20,

000321-34, 000335-48, 000349-54, 000355-72, 000373-94, 000395-409, 000410-21, 000422-37, 000438-48, 000449-64, 000465-77, 000478-90, 000491-514, 000515-28, 000529-41, and 000542-60. For the reasons previously stated, no attorney-client or work product privilege attaches to these documents. Therefore, Plaintiffs' Motion for Summary Judgment is granted for these, and Defendant's Motion is denied.

The documents in 000145-46 and 000147-56 relate to a property deal in Hoffman Estates, Ill., which appears to be a different matter from the dispute over the Developments. Defendant retained Graft for this matter. The documents do not make clear whether Graft represented Defendant directly or if a similar arrangement existed for these services as that which existed for providing legal support in opposition of the Developments. If a similar arrangement existed, Defendant probably could not assert attorney-client or work product privilege for these for the reasons stated above. However, without being presented with evidence about this deal, the Court presumes that they are privileged. In addition, these documents are most likely irrelevant to the case at hand. As such, Defendant's Motion for Summary Judgment is granted for these two documents, and Plaintiffs' Motion is denied.

## IV. <u>CONCLUSION</u>

For the reasons stated herein, Plaintiffs' Motion for Summary Judgment on Count I of their First Amended Complaint is granted in part and denied in part, and Defendant's Motion for Summary

Judgment on Count I of the First Amended Complaint is granted in part and denied in part. Defendant's Motion for a Protective Order regarding certain documents is denied.

**IT IS SO ORDERED.**

　　　　　　　　　　　　　　　　　　/s/ Harry D. Leinenweber
　　　　　　　　　　　　　　　　　　Harry D. Leinenweber, Judge
　　　　　　　　　　　　　　　　　　United States District Court

**DATE:** 6/30/2011